UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA, )
                      )
       Plaintiff,    )
                      )
vs.                 )   CASE NO. 3:17-cr-00164-TMB
                      )           3:17-cr-00163-TMB
PARAS JHA,       )
                      )
       Defendant.    )
_____)

PARTIAL TRANSCRIPT OF IMPOSITION OF SENTENCE
(Final Portion of Hearing - Public Proceedings)
**BEFORE THE HONORABLE TIMOTHY M. BURGESS, DISTRICT JUDGE**
September 18, 2018; 1:08 p.m.
Anchorage, Alaska

**FOR THE GOVERNMENT:**
Office of the United States Attorney
BY:  ADAM ALEXANDER
BY:  CATHERINE ALDEN PELKER
222 West 7th Avenue, #9
Anchorage, Alaska 99513
(907) 271-5071

**FOR THE DEFENDANT:**
Law Offices of Robert G. Stahl, LLC
BY:  ROBERT GEORGE STAHL
220 Saint Paul Street
Westfield, New Jersey 07090
(908) 301-9001

_____

**SONJA L. REEVES, RMR-CRR**
Federal Official Court Reporter
222 West 7th Avenue, #4
Anchorage, Alaska 99513
Transcript Produced from the Stenographic Record

1            UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF ALASKA
2

3    UNITED STATES OF AMERICA, )
                              )
4         Plaintiff,          )
                              )
5    vs.                      )   CASE NO. 3:17-cr-00166-TMB
                              )            3:17-cr-00167-TMB
6    DALTON NORMAN,           )
                              )
7         Defendant.          )
     _____)
8

9

            PARTIAL TRANSCRIPT OF IMPOSITION OF SENTENCE
10       (Final Portion of Hearing - Public Proceedings)
     **BEFORE THE HONORABLE TIMOTHY M. BURGESS, DISTRICT JUDGE**
11            September 18, 2018; 1:08 p.m.
                    Anchorage, Alaska
12

13   **FOR THE GOVERNMENT:**
          Office of the United States Attorney
14        BY:  ADAM ALEXANDER
          BY:  CATHERINE ALDEN PELKER
15        222 West 7th Avenue, #9
          Anchorage, Alaska 99513
16        (907) 271-5071

17   **FOR THE DEFENDANT:**
          Nesbett & Nesbett, P.C.
18        BY:  DAVID A. NESBETT
          750 West 2nd Avenue, Suite 105
19        Anchorage, Alaska 99501
          (907) 770-6920

20

21

22   _____

23            **SONJA L. REEVES, RMR-CRR**
              Federal Official Court Reporter
24              222 West 7th Avenue, #4
                Anchorage, Alaska 99513
25      Transcript Produced from the Stenographic Record

1               UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF ALASKA
2

3   UNITED STATES OF AMERICA, )
                              )
4           Plaintiff,        )
                              )
5   vs.                       )   CASE NO. 3:17-cr-00165-TMB
                              )
6   JOSIAH WHITE,             )
                              )
7           Defendant.        )
    ──────────────────────────)
8

9

           PARTIAL TRANSCRIPT OF IMPOSITION OF SENTENCE
10      (Final Portion of Hearing - Public Proceedings)
    **BEFORE THE HONORABLE TIMOTHY M. BURGESS, DISTRICT JUDGE**
11            September 18, 2018; 1:08 p.m.
                    Anchorage, Alaska
12

13  **FOR THE GOVERNMENT:**
            Office of the United States Attorney
14          BY:  ADAM ALEXANDER
            BY:  CATHERINE ALDEN PELKER
15          222 West 7th Avenue, #9
            Anchorage, Alaska 99513
16          (907) 271-5071

17  **FOR THE DEFENDANT:**
            Office of the Federal Public Defender
18          BY:  F. RICHARD CURTNER
            601 West 5th Avenue, Suite 800
19          Anchorage, Alaska 99501
            (907) 646-3400

20

21

22  _____

23              **SONJA L. REEVES, RMR-CRR**
                Federal Official Court Reporter
24               222 West 7th Avenue, #4
                 Anchorage, Alaska 99513
25      Transcript Produced from the Stenographic Record

1          (Call to Order of the Court at 1:08 p.m.)

2          (Proceedings took place that are not included

3     in this Partial Transcript, after which, proceedings

4     continued as follows:)

5          DEPUTY CLERK:  All rise.  His Honor, the Court,

6     the United States District Court for the District of

7     Alaska is again in session.

8          Please be seated.

9          THE COURT:  Have a seat everybody.  Sorry, my

10    apologies.  So we -- what I would like to do is hear

11    from the parties as to your recommendation as to an

12    appropriate sentence, taking into consideration the

13    factors that are identified in 18 United States Code,

14    Section 3553(a).

15          What I would like to do is give you an idea of

16    what I think is probably the appropriate result, and

17    then you can convince me I'm right or wrong as you go

18    forward, but I think it's valuable for Counsel to

19    understand sort of how I view the case to help inform

20    your comments.

21          So again, you know, the 34 -- the 3553(a)

22    factors that I think are implicated here are:  One, the

23    sentence to reflect the seriousness of the offense, and

24    as we heard from the testimony today, just how serious

25    the offenses in both cases were.  So I think that has

been established in the evidence that's been presented
to the Court.

I think deterrence of criminal conduct is also
important.  These are obviously very difficult cases to
investigate, and it's important that there are
consequences for this type of conduct.  So I think, you
know, the deterrence is important.

I think protecting the public from further
crimes of each of the defendants is also an important
consideration.  I'll tell you my initial analysis is I
don't think it's as important in this case.  I think
they are incredibly young, and I think they have shown
indications that they are willing to change their ways
going forward.  So I think that's of a less concern to
me.

And then, obviously, restitution is going to be
an important factor in this case.  So taking those
factors into consideration, I think that something other
than a jail term is appropriate in this case.  Again, I
think these are very young defendants, they have a lot
of opportunities ahead of them if they can focus their
energy in the right way, their energy and their talent.

So I do think a probationary sentence is
appropriate for a couple of reasons.  One is I think
when I look at those 3553(a) factors I listed, I think

1    it argues for a probationary sentence rather than a jail

2    sentence.

3          The other advantage is this:  I can be assured

4    that their behavior will conform to societal norms for a

5    longer period if they are on probation than if they are

6    on supervised release.  Supervised release is limited to

7    three years.  Probation is five years.

8          And more importantly, you know, the Government

9    has probably heard me make reference to this, and I know

10   Mr. Curtner has heard me make reference to this before,

11   but they have the sort of Damocles hanging over their

12   head for that five-year period.

13         That means if you don't behave and you engage

14   in this type of behavior in the future, you will be back

15   in front of me, and you're looking at the same potential

16   sentence you were looking at today.  So I think there is

17   -- I think there is a great incentive to the defendants

18   to do the right thing and not violate in the future.

19         So for those reasons, I do think that a

20   probationary sentence is more appropriate in this case

21   than a term of imprisonment.  That's my initial read on

22   the case.

23         So I'll first hear from the Government, then

24   I'll hear from each of the defense counsel, if there is

25   anything anybody wants to add, and then I'll hear from

1  the defendants if there is anything they want to say.

2        MS. PELKER:  Thank you, Your Honor.  I think

3  what we have here really is a unique circumstance and

4  that is what's leading the Government to not oppose the

5  probation officer's recommendation of probation.  And

6  that's particularly in light of the defendants'

7  extensive cooperation and what's outlined in the

8  Government's motion for a downward departure pursuant to

9  5K1.1.

10        The Government would emphasize here though that

11  this was incredibly severe conduct and that absent that

12  cooperation, the Government would be asking for a period

13  of incarceration here.

14        We have defendants who certainly were youthful

15  offenders with no criminal history.  They did accept

16  responsibility, which were all significant mitigating

17  factors, but they don't excuse the underlying conduct

18  where we have the development of the Mirai botnet that

19  was a massive internet of things, botnet of the sort

20  that the Government at that point and security

21  researchers had never seen before, that took advantage

22  of very novel vulnerabilities to infect hundreds of

23  thousands of devices, including devices of victims here

24  in the District of Alaska.

25        And the defendants used those cyber skills that

1    we're hopeful will help them become positive

2    contributors to society in this case to build this

3    botnet and then to launch devastating attacks against

4    victims, both for financial gain as well as out of

5    personal animosity.

6           And then even after the defendants learned that

7    the FBI was onto them, they went on to continue their

8    criminal activity in developing and building this

9    clickfraud botnet, again, using their incredible talents

10   that they have unfortunately been able to hone over

11   years of criminal activity.

12          The Government is very encouraged that the

13   defendants appear to be on a very positive path toward

14   rehabilitation here.  The Government would like to see a

15   sentence that's crafted to support that sort of

16   rehabilitation, but the Government does posit that five

17   years of probation is appropriate to allow for the

18   extended supervision and the period of supervision that

19   the Court referenced.

20          The additional 2500 hours here will address not

21   just the severity of the defendants' underlying criminal

22   activity that they are being sentenced for, but also we

23   hope to reduce that chance of recidivism.  The

24   2500 hours amounts to about ten hours a week.  We would

25   like that to be defined to consist of work by, for or

1    through the FBI.

2              THE COURT:  You asked for 2500 hours?

3              MS. PELKER:  2500 hours of community work

4    service, which we recognize is a sizeable amount of time

5    but, given that it's extended out across the five years,

6    amounts to about ten hours a week, and would allow the

7    defendants to continue the type of work they have been

8    doing and that we detailed in our filings for the FBI

9    and benefiting cyber security researchers to date.

10             Here this will, in addition to the supervision

11   that's always already going to be provided by the

12   probation officer, it will allow the defendants to

13   continue their work with the FBI, who is going to be an

14   added check on any potential inclination by the

15   defendants to return to their previous illicit

16   activities.

17             We do believe that there is an ongoing

18   obligation to protect the public here.  Unfortunately,

19   the defendants, in returning back to the clickfraud

20   botnet after developing and building Mirai, have shown

21   that they do have an inclination to engage in this type

22   of criminal activity.

23             We definitely have seen that since they have

24   agreed to cooperate with the Government that they have

25   engaged in extensive cooperation that's been incredibly

valuable, but we want to see them on a path to continue
down that road.

THE COURT:  All right.  Thank you very much.

Well, you look like you're next in line,
Mr. Curtner.

MR. CURTNER:  Well, Judge, first of all, let me
say I think you're right, and so normally I would spend
more time --

THE COURT:  Telling me I'm wrong?

MR. CURTNER:  No, in advocating for what I
think is a proper sentence, but I think it's very clear
the whole picture that's been presented to the Court
that probation is appropriate for Mr. White.

He is obviously a young and brilliant young man
as far as computers are concerned.  And I think he had a
tremendous lapse in judgment.  I think he recognizes
that now.  And it's been a learning experience for him,
and so I really don't think you'll ever see him again.
And I think he's certainly on the right path, and so I
think probation is the appropriate sentence in this
case.

THE COURT:  All right.

Mr. White, is there anything you want to say?
You don't have to say anything, but if there is anything
you want to say, this is your opportunity.

1          DEFENDANT WHITE:  No, Your Honor.

2          THE COURT:  Okay.

3          MR. STAHL:  Thank you, Your Honor.  Obviously

4    we were one of those extensive lengthy sentencing

5    submissions you referred to, so I rely --

6          THE COURT:  It's in a binder actually.

7          MR. STAHL:  That's how I like to go.

8          Your Honor, obviously, we agree with both the

9    Government and probation department and the PSR for five

10   years of probation.

11         I would add, because of Mr. Jha's unique

12   circumstances of school and work, and I'll explain that

13   in a moment, that I ask Your Honor to waive the home

14   confinement or a curfew provision, and it's because of

15   the following:

16         As you know from our submission, Mr. Jha is in

17   the School 42, and it's not the typical university

18   setting where there is day classes or evening classes.

19         THE COURT:  I thought it was all online.

20         MR. STAHL:  No, no, he's actually in the Bay

21   area in a dormitory.  In addition to that they work

22   their own hours in the computer lab in the school,

23   Mr. Jha is also an RA.  And he's in the dorm of

24   400-some-odd students, and he is tasked at all hours of

25   the day and night to go out and to go to different areas

of the dorm when students lock themselves out, when they
have other issues, computer issues, and all sorts of
things that go on with young people being forgetful and
things.

So to have him under a curfew or electronic
monitoring, some type of system where he would be in his
room for particular hours, would be impractical. I have
discussed this with the Government. I don't know if
they still take the position that they did in the
sentencing memo, but I think in his circumstances, it is
impractical.

And quite frankly, it's not necessary. Mr. Jha
has been not only working extensively with the
Government for the past year plus, he's also been out at
the school, as Your Honor knows, for a considerable
period of time and has had no issues at all with his
computer use. It's an advanced course.

He's not only an RA there, but he is one of the
trusted members of the school that has solved the
computer issues for what is an advanced computer school
and has received recognition from the school for solving
their network and other problems.

So I don't disagree with the five years
probation. I don't disagree with the hours of community
service. I simply would ask the Court to waive any

provision about a curfew or some type of monitoring
based upon his situation right now.

THE COURT: Let me stop you for a second.
What's the Government position on the --

MS. PELKER: I believe we would defer to the
Court to the extent it would impact the defendant's
ability to continue with his educational
responsibilities.

THE COURT: Do you feel the same way for all
three defendants, or I mean, what if we just took an
incremental approach and not impose the home
confinement, the GPS and home confinement at this point,
as long as they are pursuing their community service,
pursuing educational opportunities or work, any
combination of those things.

If there needs -- if for some reason they end
up violating the Court's trust and we need to tighten
the conditions, you can always seek a modification of
supervision.

MS. PELKER: That's fine with the Government.

THE COURT: So I think we have taken care of
that for all three defendants.

MR. STAHL: Thank you, Judge. And just last,
we don't take any issue with the restitution number that
has been arrived at.

1          And I would just ask, based upon the

2     restitution, based upon Mr. Jha as a full-time student,

3     he has a part-time job now, that you would waive any

4     fine.

5          THE COURT:  I'm not going to impose any fine.

6          MR. STAHL:  Then I will sit down.

7          THE COURT:  Thank you.

8          Mr. Jha, is there anything you would like to

9     say?  Again, you don't have to say anything, but if

10    there is anything you would like to say, this is your

11    opportunity.

12         DEFENDANT JHA:  Yes, Your Honor.  I realize

13    we're all here because of me and the mistakes that I

14    made.  I'm fully sorry for my actions, and I apologize

15    to the people and businesses that were impacted by them.

16         I'm sorry for the family, friends for putting

17    them in trouble with the FBI.  I'm sorry for the attacks

18    against Rutgers and apologize to the students and

19    faculty that were affected.

20         I didn't think of them as real people because

21    everything I did was online in a virtual world.  Now I

22    realize I have hurt real people and businesses and

23    understand the extent of damages I did.

24         What started off as a small mistake continued

25    down a slippery slope to a point where I am ashamed to

admit what I have become.  I had not stopped to consider the damage that my action was causing.

I have hurt my parents, my family, my friends. I lied to them and broke their trust.  I want to say I'm really sorry to my mother, my father, and my family and friends for putting them through this.

Two years ago when I first met Special Agent Elliott Peterson, I was an arrogant fool believing that somehow I was untouchable.  When I met him in person for the second time, he told me something that I'll never forget:  "You're in a hole right now.  It's time you start digging."

Looking up from my hole, I came to realize just how far I had fallen.  At that point, I was at a crossroads in my life.  I could choose to ignore the consequences of my actions, or I could face my situation head on and start my journey back up.

The first step to doing right was being open and honest with the transgressions.  Only then would I be able to start making changes in my life.  Otherwise, I will always have something to hide.

This transparency has allowed me a fresh start in life from assisting the FBI in several cases to attending school, to making real friends and holding down a job in a field I like.

 1          I have continued to use these skills for the

 2     betterment of society and to start giving back some of

 3     what I have taken.  I cannot change the past and have to

 4     live with the consequences of those actions.  I take

 5     responsibility for my mistakes, and, once again, say

 6     sorry to all the people that were affected.

 7          I'd also like to thank my family, my friends

 8     and Agent Peterson for helping me through this.  I know

 9     that rebuilding trust is a monumental task, one that I

10     hope to rise up to, starting with the changes I have

11     already made in my life.

12          THE COURT:  Thank you very much.

13          MR. STAHL:  Thank you, Your Honor.

14          THE COURT:  Thank you.  Okay.

15          MR. NESBETT:  As with the others, Mr. Norman

16     also agrees with the proposed sentence in this case, and

17     will also, to a large extent, rest on all of the

18     extensive briefing we all have done in this case.

19          I'm sure the Court has read all of it.  And one

20     of the issues that was brought up earlier were his

21     objections to the PSR.  It's very important for

22     Mr. Norman, throughout all of the time that we have

23     spent together discussing the case, it has been vitally

24     important for Mr. Norman to make sure that the Court

25     understands that his role in the Mirai virus came in at

1    a later date chronologically.

2           It is very important that I make sure to

3    emphasize that with the Court, that he came in in

4    September, that his role was limited to the extent that

5    he didn't profit from it, and he didn't draft the code,

6    nor was -- and he was actively discouraging the others

7    from releasing the code virus.

8           He says all of that in order to put a fence

9    around, in his own mind, his role in that offense, not

10   in any way to subtract from his responsibility for what

11   happened.  It's really important that I distinguish that

12   and I help him distinguish that.  But for his own sense

13   of integrity, it is important I pointed that out to the

14   Court.

15          And the other issue I want to emphasize from

16   the briefing was that the length of time that all three

17   defendants in this case, including Mr. Norman, had been

18   working with the FBI on this establishes a very

19   significant track record of credibility and trust with

20   the FBI.  That is very different from a typical

21   cooperation type of environment where you come in for a

22   debrief, for example, and you meet once or twice with

23   the agents.

24          I think this sentence helps capture that

25   history, which in turn I think emphasizes the likelihood

1    that they will not be back and that recidivism is not an

2    issue that we need to worry about in this case.

3            And finally, one issue that I discussed at

4    length, or at least mentioned in my briefing and also

5    attached some accompanying documents to the briefing,

6    was having to do with Mr. Norman's difficulty in speech,

7    and this is related in some ways to his conduct in this

8    case and his activity in computers.

9            But as a result of those disabilities, he has

10   asked that I read a letter to you.  It's not because

11   he's nervous at public speaking necessarily.  It's

12   because he has a disability that prevents him from being

13   able to speak to the Court, one of the reasons he was

14   having a difficult time even answering yes or no

15   questions to the Court earlier.

16           I would like to read that letter.  Again, this

17   is something to supplement what he has submitted

18   already.

19           "Your Honor, I would again like to express my

20   remorse for my actions.  I now have to move forward with

21   my life as a convicted felon.  I just want everyone in

22   this courtroom to know I'm not a malicious monster with

23   no integrity or morals.  I myself did not want to cause

24   harm to anyone or any company by my actions of

25   associating with Mr. Jha and Mr. White.

1        "I truly regret my failures to end this mess.

2   I want to thank the FBI, especially Agent Peterson, for

3   being a positive mentor through this process and by

4   going above and beyond what was expected of him.  I also

5   would like to thank the Government for suggesting

6   leniency, and I promise I will never be on their radar

7   again.

8        "I would like to thank the Department of

9   Justice and the federal court system, Your Honor, for

10  appointing Mr. Nesbett as my attorney."

11       I didn't write that.

12       "He has worked tirelessly in my defense and I

13  will always be in debt to him.  Lastly I would like to

14  thank you, Your Honor, for ruling today and being

15  patient with me throughout this process.  I promise Your

16  Honor not to fail you, as I have failed myself.  I have

17  to move on in my life.

18       "It will be an uphill struggle being a

19  convicted felon; however, my integrity has never

20  wavered.  I truly know right from wrong.  I just need to

21  synchronize my actions with my thoughts and with what my

22  parents have instilled in me.

23       "I'm very fortunate to have a loving family who

24  will support me through good times and bad times, as

25  evident in the last two years.  With my honor and

integrity still ingrained in me, I will pick up the
pieces of this shattered mess and make my home in New
Orleans proud of me one day again soon.  I will put my
mind and my skills to a positive effort for the
remainder of my life.

"Thank you again, Your Honor, for allowing me
to address the Court."

THE COURT:  Thank you very much.  I appreciate
everybody's sentencing comments.  You're probably happy
to know you haven't changed my initial opinion that a
probationary sentence for all three defendants is
appropriate in this case.

You know, you're still very young men.  I'm not
sure you have any sense of -- hopefully you're getting
to have a sense of, and from your statements it seemed
like you're beginning to have a sense of the impact what
you did had on society, on companies, on people, on your
families, I mean, if you think about what you put your
families through.

On the other hand, you know, I got to tell you
you're lucky because 99 percent of the time that I
sentence somebody in court here, there is nobody out
there for them.  So I hope when you go home tonight you
thank your families for being there for you, and I hope
you never put them in this situation you put them in

1 here today.

2    I am also heartened that you have developed

3 such a good relationship with Special Agent Peterson.

4 You know, in this political climate -- and this is not

5 intended to be a political statement, but a lot of times

6 you hear a lot of criticism of the FBI, but I'll tell

7 you you couldn't pick a better role model than Agent

8 Peterson, someone who served his country in the Marines,

9 continues to serve his country in the FBI.

10    And I hope you take something from that,

11 because you're young, you have a lot to give to society,

12 and, you know, you have a lot of talent and skill.  I

13 hope you use it for good and not bad going forward.

14    So let me take these one at a time, and I'll

15 start as I began, with Mr. White.

16    So I'm going to impose all of the special

17 conditions that are listed, except -- with the exception

18 -- and this is going to be true for all three defendants

19 -- I'm not imposing condition number six, which is the

20 monitoring system.  But I am changing number one, which

21 is the recommendation for 200 hours of community service

22 to 2500 hours of community service during this five-year

23 period of probation.

24    Pursuant to the Sentencing Reform Act of 1984

25 and considering the factors found in 18 U.S.C. 3553(a),

which I have already articulated, it is the judgment of

Court that the defendant, Josiah White, is hereby placed

on probation for a term of five years.

While on probation, the defendant shall not

commit another federal, state or local crime, shall not

possess a firearm or illegal controlled substance, and

shall comply with the collection of a DNA sample and

shall comply with the standard as well as special

conditions included in the judgment issued by the Court.

The mandatory condition of supervision as set

forth in 18 United States Code Section 3563(a)(5)

requiring the defendant to submit to drug testing is

suspended because there appears to be low risk of future

substance abuse by the defendant.

The Court finds that the defendant does not

have the ability to pay a fine.  It is further ordered

that the defendant shall pay the United States the

special assessment of $100, which shall be paid

immediately to the clerk of court.

It is further ordered the defendant shall pay

restitution in the amount of $127,000 consisting of

$15,000 to HyPixel, $2,000 to Psychz Network, $100,000

to Akamai.  I'm batting about 800 so far.  And $10,000

to HostUS.

The restitution shall be joint and severally

1    with his co-defendants, Mr. Jha in case

2    3:17-criminal-164, and Mr. Norman in case

3    3:17-criminal-167.  Any unpaid amount is to be paid

4    during the period of supervision in monthly installments

5    of not less than 10 percent of the defendant's gross

6    monthly income or $25, whichever amount is greater.

7    Interest on the restitution shall not be waived.

8            And there was an appeal waiver; is that

9    correct?

10           MR. ALEXANDER:  Yes, Your Honor.

11           THE COURT:  Mr. White, as part of your

12   agreement in this case, you have given up your right to

13   appeal.  Do you understand that?

14           DEFENDANT WHITE:  Yes, Your Honor.

15           THE COURT:  Okay.  Mr. Jha, again, same two

16   changes:  I'm eliminating special condition listed in

17   number six and I'm modifying condition number one to be

18   2500 hours.

19           Pursuant to the Sentencing Reform Act of 1984

20   and considering the factors found in 18 United States

21   Code Section 3553(a), it is the judgment of the Court

22   that the defendant is hereby placed on probation for a

23   term of five years, consisting of five years in case

24   3:17-criminal-163 and five years in case

25   3:17-criminal-164 to be run concurrently.

1    While on probation, the defendant shall not

2    commit another federal, state or local crime, shall not

3    possess a firearm or illegal controlled substance and

4    shall comply with the collection of a DNA sample and

5    shall comply with the standard as well as special

6    conditions included in the judgment issued by the Court.

7    The mandatory condition of supervision set

8    forth in 18 United States Code Section 3563(a)(a)

9    requiring the defendant to submit to drug testing is

10   suspended because it appears to be a low -- there

11   appears to be low risk of future substance abuse by the

12   defendant.

13   The Court finds the defendant does not have an

14   ability to pay a fine.  It is further ordered the

15   defendant shall pay the United States the special

16   assessment of $200, which shall be paid immediately to

17   the clerk of the court.

18   It is further ordered that the defendant shall

19   pay restitution in the amount of $127,000, consisting of

20   $15,000 to HyPixel, $2,000 to Psychz Networks, $100,000

21   to Akamai and $10,000 to HostUS.  The restitution shall

22   be joint and several with Josiah White, case

23   3:17-criminal-165, and Dalton Norman, case

24   3:17-criminal-167.

25   Any unpaid amount is to be paid during the

period of supervision and in monthly installments of not
less than 10 percent of the defendant's gross monthly
income or $25, whichever amount is greater.  Interest on
the restitution shall not be waived.

      Mr. Jha, same as I mentioned in regard to
Mr. White, you had a waiver of your appeal rights in
this case, which means you don't have a right to appeal
my sentence.  Do you understand that?

      DEFENDANT JHA:  Yes, Your Honor.

      THE COURT:  I'm sorry.  There were no charges
to dismiss for your client?

      MR. ALEXANDER:  That's correct.

      THE COURT:  For any of them?

      MR. ALEXANDER:  I think that's correct, Judge.

      THE COURT:  While I'm doing the last one, you
can double-check and make sure there is no charges that
need to be dismissed.

      All right.  Mr. Norman, again, of the special
conditions I'm making the same modification.  I'm not
requiring that you wear any monitoring, but I am
requiring that you do 2500 hours of community service
during your five-year period of probation.

      The same -- this goes to -- same comments to
all three of you.  You know, part of the reason is you
can do the community service in any way you like.  Like

1    I mentioned before, you can work in a soup kitchen, you

2    can work picking up garbage, you can continue to help

3    provide with your expert assistance that can help

4    others.  What's important is you understand that you

5    have an obligation to give back.  You have a lot of

6    talent and skill, but it's not a one-way street.

7            Okay.  Pursuant to the Sentencing Reform Act of

8    1984 and considering the found in 18 United States Code

9    Section 3553(a), it is the judgment of the Court that

10   the defendant, Dalton Norman, is hereby placed on

11   probation for a term of five years, consisting of five

12   years in case 3:17-criminal-166, and five years in case

13   3:17-criminal-167, to be run concurrently.

14           While on probation, the defendant shall not

15   commit another federal, state or local crime, shall not

16   possess a firearm or illegal controlled substance, shall

17   comply with the collection of a DNA sample and shall

18   comply with the standard as well as special conditions

19   that are included in the judgment issued by the Court.

20           The mandatory condition of supervision as set

21   forth in 18 United States Code Section 3563(a)(5)

22   requiring the defendant submit to drug testing is

23   suspended because there appears to be a low risk of

24   future substance abuse by the defendant.

25           The Court finds that the defendant does not

1    have an ability to pay a fine.  It is further ordered

2    the defendant shall pay the United States the special

3    assessment of $200, which shall be paid immediately to

4    the clerk of court.

5         It's further ordered that the defendant shall

6    pay restitution in the amount of $115,000, consisting of

7    $15,000 to HyPixel and $100,000 to Akamai.  The

8    restitution shall be joint and several with Josiah White

9    in case 3:17-crimimal-165 and Paras Jha in case

10   3:17-criminal-164.

11        Any unpaid amount is to be paid during the

12   period of supervision in monthly installments of not

13   less than 10 percent of defendant's gross monthly income

14   or $25, whichever amount is greater.  Interest on the

15   restitution shall not be waived.

16        And I think that should take care of everything

17   unless there is anything -- I'm sorry.  I forgot to

18   mention, Mr. Norman, you also in your plea agreement

19   agreed to give up your right to appeal.  Do you

20   understand that?

21             DEFENDANT NORMAN:  Yes.

22             THE COURT:  Okay.  So there are no charges to

23   dismiss?

24             MR. ALEXANDER:  There aren't, Your Honor.  Just

25   briefly, pursuant to the plea agreement, it was

1    previously discussed during the preliminary change of

2    plea hearings, there was a term in all of the plea

3    agreements regarding voluntary abandonment of

4    cryptocurrency seized during the course of the

5    investigation.

6                THE COURT:  Actually, I do recall that.  So

7    it's not a forfeiture, it's just an abandonment.  Have

8    you secured that?

9                MR. ALEXANDER:  Some of it I believe is in FBI

10   custody.  I believe the cryptocurrency belonging to

11   Mr. Norman, some of which I believe was in the

12   attorney's custody, but all of which, pursuant to the

13   terms of the plea agreement, upon conclusion of

14   sentencing, should be voluntarily abandoned to law

15   enforcement.

16               THE COURT:  Mr. Nesbett has it?

17               MR. ALEXANDER:  No.  Well, Mr. Nesbett -- I'm

18   not sure if Mr. Nesbett has it here physically.  I think

19   that is actually in FBI New Orleans custody.

20               THE COURT:  Is it just a key?

21               MR. ALEXANDER:  USB thumb drive.

22               MR. NESBETT:  We helped effectuate some of that

23   return at the time, but I think that went back with New

24   Orleans I believe.

25               THE COURT:  So I'm a little confused.  So you

 1  do or don't have it all?  That's kind of a yes or no.

 2          MR. ALEXANDER:  Your Honor, I believe that --

 3  Mr. Stahl can correct me if I'm wrong -- that he has got

 4  custody of --

 5          MR. STAHL:  My understanding is that the

 6  custody has been -- it was given to FBI in Newark field

 7  office, so they have that.

 8          But whatever we need to do, if there is

 9  anything, obviously, we'll effectuate that.

10          THE COURT:  Okay.  All right.  So I will assume

11  that you'll close the loop on getting it transferred to

12  the Government of the cryptocurrency.

13          MR. ALEXANDER:  That was all, Your Honor, just

14  consistent with the plea agreement.  I have no reason to

15  believe it won't happen.

16          MR. STAHL:  I have one housekeeping thing to

17  alert Your Honor.  I have already spoken to the court

18  reporter.  Tomorrow my office will be submitting a

19  transcript request, including the sealed proceedings, in

20  order for Your Honor to consider.

21          I believe the Government has no objection.  I

22  would like to have the sealed proceedings available to

23  the Court in New Jersey, Judge Shipp, and also the U.S.

24  attorney's office and probation for Mr. Jha's sentencing

25  next week, because this cooperation is being credited

1  there as well.  I think it is appropriate to do so.

2         THE COURT:  Sure.  So you'll get that request

3  to me.

4         MR. ALEXANDER:  My understanding is that that

5  request is that it will remain under seal in New Jersey

6  as well.

7         THE COURT:  The sealed portion?

8         MR. STAHL:  It won't be made public.  It will

9  be submitted to the parties, the Court, the assistant

10  U.S. attorney and probation.

11         THE COURT:  Okay.  I will sign off on that to

12  make sure that you have that available.

13         Okay.  Great.  Anything else?

14         MR. STAHL:  No, Your Honor.  Thank you very

15  much.

16         THE COURT:  Mr. Nesbett?

17         MR. NESBETT:  No, Your Honor.

18         MR. CURTNER:  No, Your Honor.  Thank you.

19         THE COURT:  Mr. Alexander?

20         MR. ALEXANDER:  No, Your Honor.  Thank you.

21         THE COURT:  All right.  Thank you very much.

22  We'll be in recess.

23         Good luck, gentlemen.

24         DEPUTY CLERK:  All rise.  This matter is

25  adjourned.  This court now stands adjourned subject to

1     call.

2              (Proceedings concluded at 3:28 p.m.)

3

4                        CERTIFICATE

5     I, Sonja L. Reeves, Federal Official Court Reporter
      in and for the United States District Court of the
6     District of Alaska, do hereby certify that the foregoing
      transcript is a true and accurate transcript from the
7     original stenographic record in the above-entitled
      matter and that the transcript page format is in the
8     conformance with the regulations of the Judicial
      Conference of the United States.

9

      Dated this 20th day of September, 2018.

10

11
                             /s/ Sonja L. Reeves
12                           SONJA L. REEVES, RMR-CRR
                             FEDERAL OFFICIAL COURT REPORTER
13

14

15

16

17

18

19

20

21

22

23

24

25